UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROY ALLEN HAYNES, | ) | CASE NO.  5:07cv2352 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY SWANSON, et al., | ) | **MEMORANDUM OF** |
| | ) | **OPINION AND ORDER** |
| Defendants | ) | [Resolving Doc. 12] |
| | ) | |

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 12) Plaintiff's Complaint (Doc. 1). Plaintiff filed his Complaint *pro se*, and this Court later appointed counsel to represent him *pro bono*. (Doc. 16.) Said counsel filed Plaintiff's Response in Opposition to Defendants' Motion (Doc. 19) on May 13, 2008. Defendants timely filed their Reply (Doc. 20). The Court has been advised, having reviewed the parties' filings and the applicable law. For the reasons set forth below, Defendants' Motion is GRANTED in part, DENIED in part.

**I.     Background**

Plaintiff Roy Allen Haynes ("Plaintiff") has filed this action under 42 U.S.C. § 1983, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., as well as violations of the Eighth and Fourteenth Amendments and several state and federal criminal laws. The facts as set forth herein are those represented to the Court by Plaintiff in his Complaint and his Opposition to Defendants' Motion to Dismiss. At all times relevant to this litigation, Plaintiff asserts that he has been suffering from the late stages of the AIDS virus.

In August of 2000, Plaintiff was arrested in Stark County, Ohio, for the illegal cultivation of marijuana. He fled during his trial and was apprehended and held on an Ohio warrant on June 22, 2005, in Orleans Parish, Louisiana. The Stark County Sheriff's Department transported

Plaintiff from Orleans Parish Prison to the Stark County Jail on July 21, 2005.  Nurse Broomfield of the Orleans Parish Prison provided the transporting deputies, whom Plaintiff identifies as Agent Andrew Turowski and Inspector Steve Ready, with a fourteen-day supply of his medications, a prescription card signed by a physician and Plaintiff's medical records.  Plaintiff was ill and vomiting for the duration of the trip from Orleans Parish to the Stark County Jail.

When Plaintiff arrived at the Stark County Jail, he was examined by a nurse identified as a Jane Doe in the Complaint.  He informed her that he was suffering from AIDS, he described his medications to her, and gave her the names and contact information for the doctors he had seen in Louisiana.  She threw away the medication given to the Stark County transporting deputies by Nurse Broomfield and issued no new medications.

That evening, he was placed in the infirmary of the Stark County Jail, but was later told he was being moved and would need to carry his own mattress.  Plaintiff told the officers he could not carry his mattress in his weakened state, but the officers told him to carry it himself or to do without it.  They then placed him in a "punitive segregation cell" without a new mattress and without any explanation.  Plaintiff slept on the cement floor and was denied his medication and a doctor's appointment.  He spent most of the day and evening of July 21, 2005, vomiting and suffering from night sweats and chronic diarrhea.  He was ultimately given a mattress and a sheet by a female deputy late into the evening on July 21, 2005.

At this point, Plaintiff becomes unclear about the dates and times of the various occurrences because, as he says, he was in a cell without windows and was having difficulty gauging the time of day.  Plaintiff continued to suffer from vomiting, night sweats and chronic diarrhea, and, shortly after arriving at the Stark County Jail, also developed a case of thrush. While he continued to ask for clean linens and medications, his requests were repeatedly refused.

2

He also requested that his water be boiled or frozen to avoid contact with harmful bacteria in the tap water, but this request was also refused.

On July 24, Plaintiff says that he continued to suffer from thrush, and began coughing up blood and experiencing ear aches.  He requested to go to the hospital, but the deputies and nurses refused.  He reports that he fell to the floor at one point from his illness and requested help from a deputy, who told him that she refused to help him, "gloves or no gloves."  On Tuesday of the week in question (which was July 26), Plaintiff was given a shower and a clean jumpsuit. However, when he returned to his cell from his shower, the fumes from the bleach that was used to clean the cell were strong and caused his throat and eyes to burn.

Later in the day on July 26, he was examined by a doctor.  He contends that the doctor checked his ears through the food tray slot in the cell door, disregarding Plaintiff's complaints of thrush in his throat and other problems.  He told Plaintiff there was nothing wrong with him and disregarded his request for AIDS medications.

Plaintiff reports that, shortly after the doctor's visit, he was permitted to make the first and only phone call he was afforded at the Stark County Jail, but that he was required to don a "hazmat-like suit" in order to leave the cell to make his call.  He used his phone call to talk with his sister-in-law, but says that the call was interrupted by an officer who prevented him from telling his sister-in-law all that was happening to him at the jail.

On July 27, 2005, Plaintiff appeared in Common Pleas Court in Stark County.  In order to be transported for his court appearance, Plaintiff was required to wear another "hazmat-style suit."  He began to vomit and to defecate inside the suit during the ride from the jail to the court, which caused the deputies to return him to the jail.  They gave him a new jumpsuit to replace the

one he had soiled.  Shortly thereafter, he says that he was transported by EMT to Aultman Hospital, and that the EMT did not require him to wear the hazmat suit.

The Stark County Court of Common Pleas communicated with Plaintiff while he was in the hospital and informed him that he would be released on bond on his own recognizance and would not have to return to the Stark County Jail.  He was seen by two infectious disease doctors while at Aultman Hospital, and was released from the hospital after five days, at which time he went to stay with his niece in Canton, Ohio.

When Plaintiff appeared in the Stark County Court of Common Pleas for his arraignment, he explained his medical condition to the judge, who permitted him to return to Louisiana for seven days in order to see his physicians.  One of the physicians provided a letter to the judge that was used during Plantiff's plea hearing, detailing Plaintiff's medical condition and describing the set-back he had suffered during his time at the Stark County Jail.  After Plaintiff's plea and sentencing, he was housed at the Pickaway Correction Camp's Frazier Health Clinic.

Plaintiff contends that, after his stay at the Stark County Jail, it took him six months to return to the physical condition he was in when he left Louisiana in July 2005.  He further alleges that he was not permitted his phone call until the fifth or sixth day at the Stark County Jail, and he was unable to talk to an attorney about the charges for which he had been brought back to Ohio.

Plaintiff now alleges that his treatment in the Stark County Jail (SCJ) violated his civil and constitutional rights.  He names the Stark County Sheriff, Timothy Swanson, as well as several unnamed deputies and nurses at the Stark County Jail whom he plans to name after completing some discovery.  He brings his claim under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., as well as various other provisions of

state and federal law.  He has requested a jury trial, and seeks compensatory and punitive damages as well as injunctive and declaratory relief.

## II.    Applicable legal standard

As the Court of Appeals for the Sixth Circuit stated in *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007):

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, (2007).  The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id*. (internal citation and quotation marks omitted).  In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Twombly*, 127 S.Ct. at 1969.

*Id*. at 548.

If an allegation in the complaint is capable of more than one inference, the Court must construe it in the plaintiff's favor.  *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  The Court may not grant a Rule 12(b)(6) motion merely because it may not believe a plaintiff's factual allegations.  *Id*.  Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions.  *Id*.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory.  *Id*., citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436

(6th Cir. 1988).  Pro se pleadings are generally liberally construed.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.    Analysis

Defendants have moved to dismiss Plaintiff's Complaint on several grounds, as follows: (1) Plaintiff's claims under § 1983 and the ADA are barred by the statute of limitations; (2) Plaintiff has failed to state any claims against Sheriff Swanson upon which relief can be granted; (3) Plaintiff has failed to exhaust his administrative remedies; (4) Defendants are entitled to qualified immunity; (4) Plaintiff's allegations that Defendants violated criminal laws fail to state a claim upon which relief can be granted.

## A.    Statute of Limitations

Defendants argue that the statute of limitations on Plaintiff's claims has run, and that his claims are therefore barred.  "'[T]he appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio . . . requires that actions . . . be filed within two years after their accrual.'"  *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (omissions in original) (citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc)); *see also Owens v. Okure*, 488 U.S. 235 (1989).  In Ohio, the statute setting forth the relevant limitations period is Ohio Rev. Code § 2305.10(A), which states that a claim must be brought "within two years after the cause of action accrues."  *Id.*  The cause of action accrues "when the injury or loss to person or property occurs."  *Id.*  Similarly, a claim under the ADA is subject to a two-year statute of limitations period.  *See Deck v. City of Toledo*, 56 F. Supp.2d 886, 890-91 (N.D. Ohio 1999).

Ordinarily, according to Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court."  However, this Circuit adheres to a prison

mailbox rule in determining when a complaint is deemed filed by a prisoner.  Under that rule, a prisoner's complaint is deemed filed when it is handed over to prison officials to be placed in the prison mail system.  *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2004).

Defendants contend that, taking all facts alleged by Plaintiff as true, Plaintiff's claims under § 1983 and the ADA accrued on July 21, 2005, the day that he was transported from Louisiana and his medications were thrown away by the nurse at the Stark County Jail.  They argue that Plaintiff should have known that he was going to be denied medical treatment at that point.  They cite to decisions in which courts have found that a cause of action accrues at the point at which a person is aware of medical neglect.

Plaintiff counters that his cause of action did not accrue until July 26, 2005, when he was visited by the doctor at the jail and the doctor refused to issue him the medications he required.  He argues that, during the five days between his transport to the jail and the visit by the doctor, he could not be certain that medical care would be denied him, as he had received no definitive answer from a doctor, who presumably would have had the authority to prescribe medications but who had not yet visited him.

In one case cited by Defendants, an inmate had made several requests between November 1996 and January 1997 to be evaluated for sleep apnea.  *Hawkins v. Spitters*, 79 Fed. Appx. 168 (6th Cir. 2003).  The court concluded that the inmate's claim had accrued on January 31, 1997, the date upon which he received a denial of the grievance he had filed challenging the institution's refusal to conduct an evaluation.  *Id.* at 169.  On appeal, the inmate argued that his cause of action did not accrue until he was diagnosed with sleep apnea.  *Id.*  The Sixth Circuit upheld the district court's conclusion that the inmate's cause of action accrued on January 31,

1997, the date on which his grievance was denied and he had received a definitive answer regarding his request for medical attention.  *Id.*

The second case cited by Defendants involves an inmate who injured his elbow but was denied physical therapy by the institution at which he was housed.  *Frasure v. Shelby County Sheriff's Dept.*, 4 Fed. Appx. 249, 250 (6th Cir. 2001).  The court held that the inmate's action accrued when the inmate knew of the institution's decision to deny him physical therapy.  *Id.* at 251.

In the instant case, it appears that Plaintiff's Complaint was handed over to prison officials for mailing on July 24, 2007.  Under Defendants' argument, Plaintiff was three days outside the statute of limitations period for his claims.  However, the Court is not convinced that Plaintiff actually knew of his cause of action on July 21, 2005.  According to the facts before the Court at this stage in the proceedings, Plaintiff was not aware that he was actually being denied medical treatment until the doctor examined him on July 26, 2005.  In *Frasure*, the inmate's claim did not accrue until the institution denied him physical therapy.  The cause of action in *Hawkins* did not accrue until the denial of the inmate's grievance, which was after the medical treatment sought by the inmate was denied.  At this point in the proceedings and on the basis of the facts as alleged by Plaintiff, the Court is not prepared to say that Plaintiff's claims are barred by the statute of limitations.  Defendants' attempt to dismiss on this basis is DENIED.

**B.      Exhaustion of administrative remedies**

Defendants contend that Plaintiff has not exhausted his administrative remedies because he has not followed the procedures of the Stark County Jail in a manner that they believe satisfies the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The United States Supreme Court has held that the failure to exhaust administrative remedies is an affirmative

8

defense to be raised by a defendant, and a prisoner is not required to demonstrate exhaustion in his complaint.  *Jones v. Bock*, 127 S. Ct. 910, 921 (2007).  While the *Jones* court acknowledged that it is possible for a claim to be dismissed under Fed. R. Civ. P. if an affirmative defense appears on its face, and further acknowledged that it is possible for the exhaustion defense to be a ground for dismissal for failure to state a claim, the general rule under *Jones* is that the plaintiff is not required to make a specific showing of exhaustion in his complaint.  *See id.* at 920-21.

This is not a case in which failure to exhaust is apparent on the face of the complaint. Plaintiff has attached to his Complaint two letters he wrote to the Stark County Jail in which he attempted to notify jail officials of his desire to file a grievance.  The first letter, dated July 4, 2006, is specifically titled a "Formal Notice of Grievance."  Accompanying this letter is a photocopy of the certified mail receipt for the July 4 letter, which is addressed to the Stark County Jail and is signed and dated July 12, 2006.  The second letter, dated March 27, 2006, is entitled "Grievance against Stark County Medical and Jail staff," and references a first attempt to file a grievance in October 2005.  Plaintiff alleges in his Complaint that, while he made his first attempt in October 2005, he failed to save a photocopy of that letter to submit with his Complaint.  Plaintiff asserts that he received no answer to any of his letters from anyone at the Stark County Jail.

Defendants contend that such efforts by Plaintiff are insufficient to satisfy the exhaustion requirement.  They rely for this argument on the fact that Plaintiff's first attempt to file a grievance in October 2005 was two months after he had left the Stark County Jail and was therefore untimely, as no remedy could be offered within the jail.  They further contend that his letters did not comply with the Stark County Jail's particular grievance procedures.

9

At this stage in the litigation, and taking all of Plaintiff's allegations as true, the Court is not prepared to conclude that Plaintiff has failed to exhaust his administrative remedies.  Plaintiff was housed at the Stark County Jail for approximately one week.  During the entirety of that time, Plaintiff was, according to his assertions, entirely unwell.  Further, as this Court has already made clear in its discussion of the statute of limitations in this case, Plaintiff was unsure what jail personnel intended to do until July 26, 2005, a mere two days before he was released.  Finally, it is unclear at this stage in the proceedings how Plaintiff should have set about remedying the shortcomings in his attempts to file a grievance when the Stark County Jail officials refused to answer his letters.

The legal standard for deciding a motion under Fed. R. Civ. P. 12(b)(6) is strict.  Under that standard, the Court cannot find that Plaintiff has failed to exhaust the available administrative remedies.  Defendants' motion to dismiss on this basis is DENIED.

## C.     Claims against Defendant Swanson

Defendants argue that Plaintiff has failed to set forth any facts upon he could support a claim against Defendant Swanson for failure to supervise or train the employees at the Stark County Jail, resulting in a violation of Plaintiff's constitutional rights.

> [A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976).  If a plaintiff fails to allege that a named defendant was directly involved in the misconduct or that he "condoned, encouraged, or knowingly acquiesced in [that] alleged misconduct," his claims against the named defendant are subject to dismissal.  *See McCallum v.*

*Gilless*, 38 Fed. Appx. 213, 215 (6th Cir. 2002) (citing *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993)).

Plaintiff has failed to allege any facts that would indicate that Defendant Swanson was aware of the alleged misconduct at the Stark County Jail, or that he in any way condoned the deputies' activities. There is no allegation that Defendant Swanson acted to deprive Plaintiff of medical care. Plaintiff alleges that he received permission on July 26, 2005, to place one phone call, the first he had been permitted to make while at the Stark County Jail, and that he used it to call his sister. He alleges that, based upon what she heard, she placed a call to Defendant Swanson to inform him of Plaintiff's situation. However, the Court finds that this allegation is insufficient to impute knowledge of or acquiescence in the alleged misconduct of the prior five days to Defendant Swanson. Defendant Swanson's motion to dismiss the claims against him on this basis are GRANTED.

### D.    Qualified Immunity

Defendants contend that the facts as alleged by Plaintiff show that all Defendants were acting in good faith and are therefore entitled to qualified immunity on all of Plaintiff's claims. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)).

The Sixth Circuit has recently commented on the potential difficulty of deciding a motion to dismiss on the basis of qualified immunity. The court recognized that the discovery process

11

could give a plaintiff an opportunity to set forth more detailed claims and successfully make out a viable claim for the violation of his constitutional rights.  It noted that, for that reason, "[d]ismissals on the basis of qualified immunity are generally made pursuant [to] Fed. R. Civ. P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions."  *Grose v. Caruso*, No. 07-1546, 2008 U.S. App. LEXIS 14084 at *9 (6th Cir. July 1, 2008) (citing *Saucier v. Katz*, 533 U.S. 194 (2001); *West v. Atkins*, 487 U.S. 42 (1988); *Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994)).  The court held that, at the 12(b)(6) stage of the litigation, at which time the facts in the pleadings are taken by the court as true, and in a case in which the plaintiff had attempted to make out a claim for constitutional violations, dismissal on the basis of qualified immunity would be premature.  *Id.* at *10.

Moreover, the Sixth Circuit has noted that while the denial of a qualified immunity defense is subject to interlocutory appeal as a final order, the consideration of a qualified immunity defense by a district court at the Rule 12(b)(6) stage is no different from the review of any other defense:

> Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), so we review an assertion of qualified immunity to determine only whether the complaint adequately alleges the commission of acts that violated clearly established law. The Federal Rules of Civil Procedure require pleadings to set forth 'a short and plain statement showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a), and nothing about the defense of qualified immunity alters this modest pleading requirement.

*Back v. Hall*, No. 07-5934/07-5935, 2008 U.S. App. LEXIS 17057 at *6 (6th Cir. Aug. 11, 2008) (internal quotation marks and citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002); *Goad v. Mitchell*, 297 F.3d 497, 503 (6th Cir. 2002).

12

The allegations Plaintiff has made regarding the denial of medical care at the Stark County Jail are sufficient to make out a claim for violations of his constitutional rights.  At this stage in the proceedings, the Court must take Plaintiff's statement of the facts to be true, and based upon those facts, it is not prepared to decide that Defendants were acting in good faith. Defendants' motion to dismiss on this basis is DENIED.

**E.      Other allegations**

Plaintiff has raised claims under several state and federal criminal statutes, as well as under the Eighth Amendment.  Defendants argue that each of these should be dismissed because the criminal statutes do not provide a private cause of action, and the Eighth Amendment is not applicable to a person held in pre-trial detention.

In his Complaint, Plaintiff states that this action has been filed pursuant to ". . . Title 18 U.S.C. § 241 (Conspiracy Against Rights); Title 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law); as well as the following State of Ohio Statutes:  2901.22 (Culpable Mental States); 2921.22 (Failure to Report a Crime); 2921.44 (Dereliction of Duty); 2921.45 (Interfering with Civil Rights)."  (Compl. at 1).  Plaintiff gives no explanation of how these sections have been violated.

Courts have repeatedly held that statutes such as 18 U.S.C. §§ 241, 242, both purely criminal statutes, do not provide a private right of action, nor do they permit a private citizen to initiate criminal proceedings.  *See United States v. Oguaju*, 76 Fed. Appx. 579, 581 (6th Cir. 2003).  Plaintiff concedes this point in his Brief in Opposition to Defendants' Motion to Dismiss. Defendant's Motion to dismiss these claims is GRANTED.

One of the state statutes under which Plaintiff has made claims likewise provides no cause of action.  Section 2901.22 of the Ohio Revised Code ("O.R.C.") defines the culpable

mental states for criminal liability.  The plain language of the statute clearly does not provide for any cause of action, let alone a private cause of action.  Plaintiff's claim under this statute is therefore dismissed.   However, his three remaining claims under state statutes survive Defendants' Motion.  Ohio law provides as follows:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

O.R.C. § 2307.60(A)(1).   The Court finds that Plaintiff's claims under O.R.C. §§ 2921.22, 2921.44 and 2921.45 are based upon this provision of Ohio law.

The first claim, failure to report a felony under O.R.C. § 2921.22, requires that medical personnel report to authorities serious physical harm that the personnel have reason to know has resulted from the commission of a felony or offense of violence.  The second, dereliction of duty under O.R.C. § 2921.44, states, in pertinent part, that law enforcement officers in control of a prison or detention facility shall not fail to provide prisoners with adequate food, shelter, clothing, bedding or medical care.  Finally, O.R.C. § 2921.45 provides that no public servant, acting under color of law, shall deprive a person of his constitutional or statutory rights.  For the reasons set forth above, the Court finds that Plaintiff has pled sufficient facts to allow these three state law claims to survive Defendants' Motion to Dismiss.  Defendants' Motion is therefore GRANTED as to Plaintiff's claim under O.R.C. § 2901.22, and DENIED as to Plaintiff's claims under O.R.C. §§ 2921.22, 2921.44 and 2921.45.

Finally, Plaintiff has attempted to raise a claim under the Eighth Amendment for violations of the prohibition against cruel and unusual punishment.  The United States Supreme Court has held that claims brought by a prisoner who is held in pre-trial detention are not subject

to Eighth Amendment scrutiny.  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).
Such scrutiny is only applicable after the state has given the prison process and acquired the
power to punish the prisoner based upon an adjudication of guilt.  *Id.* (citing *Ingraham v. Wright*,
430 U.S. 651, 671-72, n. 40 (1977)).  Prior to a conviction, a prisoner must bring his claims
under the Fourteenth Amendment for violations of his right to due process.  *Id.*  Plaintiff has
conceded this point in his Response to Defendants' Motion to Dismiss.  Therefore, Defendants'
Motion is GRANTED as to Plaintiff's Eighth Amendment claim.

**IV.    Conclusion**

For the reasons set forth herein, Defendants' Motion is GRANTED as to Plaintiff's
claims of violations of the Eighth Amendment as well as 18 U.S.C. §§ 241, 242 and O.R.C. §
2901.22.  Defendants' Motion is DENIED as to Plaintiff's claims arising under 28 U.S.C. § 1983
for violations of the Fourteenth Amendment and O.R.C. §§ 2921.22, 2921.44, and 2921.45, as
well as violations of the ADA.  Further, Defendants' Motion is GRANTED as to Defendant
Swanson, who is hereby DISMISSED from this action.

IT IS SO ORDERED.

DATE:  September 18, 2008                  */s/ John R. Adams*
                                           Judge John R. Adams
                                           UNITED STATES DISTRICT COURT